USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 6/20/06

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X
             :

**KENNY WATSON,**
             :

             :

          **Plaintiff,**
             :     **OPINION AND ORDER**

             :

   **- against -**
             :

             :     **05 Civ. 6071 (SAS)**

**CORRECTION OFFICER ENRIQUE**
             :

**DELGADO, CORRECTION OFFICER**
             :

**MANUEL MOSCOSO, and CORRECTION**
             :

**OFFICER ALFONSO ORRICO**
**in their individual capacities,**
             :

             :

         **Defendants.**
             :

             :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

**SHIRA A. SCHEINDLIN, U.S.D.J.:**

## I.   INTRODUCTION

Kenny Watson brings suit under section 1983 of Title 42 of the

United States Code ("section 1983") alleging that Correction Officers Enrique

Delgado, Manuel Moscoso, and Alfonso Orrico maliciously and wantonly used

unreasonable and excessive physical force against him in an assault at Ossining

Correctional Facility.[1]   Defendants now move for summary judgment pursuant to

Federal Rules of Civil Procedure 56(c) seeking to dismiss the Complaint on the

---

[1]     *See* Amended Complaint ("Complaint") ¶¶ 12-13.

-1-

following grounds: (1) failure to exhaust administrative remedies; (2) failure to

state sufficient facts to sustain an Eighth Amendment claim; and (3) Eleventh

Amendment immunity.[2] For the following reasons, defendants' motion is denied.

## II.    BACKGROUND

Watson, currently an inmate at Green Haven Correctional Facility,[3]

was an inmate at the Ossining Correctional Facility from January through March

of 2004.[4] Watson alleges that on January 5, 2004, while in custody, he was

assaulted by defendants while returning to his cell after being told he could not

have a shower that day.[5] According to Watson, he had left his cell with

permission from Officer May, the corrections officer on duty on his floor, in order

to take one of his allotted showers, and was walking toward the console in order to

---

[2]    *See* Defendants' Memorandum in Support of Motion for Summary
Judgment ("Def. Mem.") at 1.

[3]    11/15/05 Deposition of Kenny Watson ("Watson Dep."), Ex. E to
2/21/06 Declaration of Andrew F. Plasse, plaintiff's counsel, in Further Support of
Opposition to Defendants' Motion for Summary Judgment ("Plasse Decl."), at
4:14.

[4]    *Id.* at 78:2-3.

[5]    Plaintiff's Memorandum in Opposition to Defendants' Motion for
Summary Judgment ("Pl. Mem.") at 2.

retrieve a razor.[6] Officer Delgado told Watson to "lock back in."[7] Watson started back toward his cell, which was in the same direction as the shower, and was "grabbed from behind and thrown into a wall, then onto the floor."[8] Watson alleges that he did not hit any of the officers.[9] He then "felt a sharp stick in his leg" and was handcuffed.[10] As a result of the alleged attack, Watson suffered "a laceration to his left leg requiring sutures," a "swollen" face, a laceration on his lip, and an injury to his left wrist.[11] He received "ongoing medical treatment" and physical therapy.[12]

Watson filed five grievances following this incident, numbered SS-38472-04, SS-38473-04, SS-38477-04, SS-38505-04, and SS-38622-04.[13] The first and third grievances, titled Grievance No. SS-38472-04 ("Grievance 472")

---

[6]  *Id.*

[7]  *Id.*

[8]  *Id.*

[9]  *See* Watson Dep. at 118:7-14.

[10]  Pl. Mem. at 2.

[11]  *Id.* at 3.

[12]  *Id.*

[13]  2/21/06 Plaintiff's Statement of Material Facts in Issue ("Pl. Statement") ¶ 21; Plasse Decl. at 1.

-3-

and Grievance No. SS-38477-04 ("Grievance 477"), were labeled "Harassment"

because they alleged employee misconduct meant to harm an inmate.[14] Grievance

472, written the day after the January 5 attack, alleged that as Watson

> turned to go to shower . . . CO Delgado rushed through gate with Cos Moscoso, Orricco [sic] and Mayo without a [sergeant] and attacked [Watson] from behind as [he] walked to shower: [he] was punched, kicked, beaten with baton and stabbed in left leg with sharp object: this attack was unprovoked and unnecessary . . .[15]

Grievance 477, written five days after the attack, stated that

> [o]n Jan. 10th 2004 during morning feeding [defendant Corrections Officer] Moscoso threatened to poison [Watson's] food if, as he put it, [Watson] open[ed his] mouth about what happend Jan. 5th 2004 at 12:30pm on [Housing Block C]...in which [Watson] was attacked from behind and thrown to the floor while [he] was on [his] way to shower, [he] was kicked, punched, stabbed by several [Corrections Officers] including [Officer] Moscoso.[16]

Under Department of Correctional Services ("DOCS") Directive

---

[14]    2/5/04 Denial of Grievance SS-38477-04 of Kenny Watson ("Grievance 477 Denial"), Ex. A to Plasse Decl. at 2.

[15]    1/6/04 Grievance SS-38472-04 of Kenny Watson ("Grievance 472"), Ex. A to 1/27/06 Affidavit of Richard Colon, Inmate Grievance Program Supervisor at Ossining Correctional Facility, in Support of Defendants' Motion for Summary Judgment ("Colon Aff."), at 1.

[16]    1/10/04 Grievance SS-38477-04 of Kenny Watson ("Grievance 477"), Ex. A to Plasse Decl., at 6.

#4040,[17] "if it is determined that [a] grievance is a bona fide harassment issue," the superintendent of the facility must initiate an "in-house investigation by higher ranking supervisory personnel into the allegations," render a decision, and transmit the decision to the grievant within twelve working days of the grievance's receipt.[18] If the grievant desires to appeal the decision to the Central Office Review Committee ("CORC"), the final overseeing committee in the grievance system, "he must file a Notice of Decision to Appeal . . . with the inmate grievance clerk within four (4) working days of receipt" of the decision.[19] If the superintendent fails to render a decision within the twelve-day limit, "the grievant may appeal his grievance to CORC," which he must do by filing a Notice of Decision to Appeal with the inmate grievance clerk.[20]

The Inmate Grievance Resolution Committee ("IGRC") received Grievance 472 on January 20, 2004.[21] On February 10, 2004, Watson wrote a

---

[17]     Inmate Grievance Program Directive #4040 ("Directive #4040"), Ex. B to Colon Aff., § VIII(D-E).

[18]     *See id.*

[19]     *Id.* § VIII(G).

[20]     *Id.* § VIII(F).

[21]     1/6/04 Grievance SS-38472-04 of Kenny Watson, Ex. A to Colon Aff., at 1.

letter to Superintendent Brian Fischer stating that he "[had not] received a response" and stating that he would "appreciate it very much if [his] grievance of January 6, 2004 [was] answered."[22] On February 23, 2004, Superintendent Fischer officially denied Grievance 472, stating on the denial form that Watson was "interviewed by Sergeant Gould," that Watson "was involved in an incident . . . which concluded with him being physically restrained after attempting to strike an officer," and that the grievance was "an attempt by [Watson] to justify his actions and [was] retaliatory for his receiving a misbehavior report."[23]

Watson claims that he never received this official denial.[24] Indeed, Fischer responded to Watson's February 10th letter on March 2, 2004, with a form memorandum of his own informing Watson that his grievance would be heard "as soon as possible" and that he "[would] be receiving a formal response," and directing Watson to "write directly to the Inmate Grievance Supervisor" with specific questions.[25] Watson claims that after receiving this letter, he "resubmitted

[22]    2/10/04 Letter from Kenny Watson to Superintendent Brian Fischer ("Watson Letter"), Ex. C to Colon Aff., at 1.

[23]    2/23/04 Denial of Grievance SS-38472-04 of Kenny Watson ("Grievance 472 Denial"), Ex. E to Colon Aff., at 1.

[24]    Watson Dep. at 80:18-23.

[25]    3/2/04 Memorandum from Superintendent Brian Fischer to Kenny Watson ("Fischer Mem."), Ex. D to Colon Aff., at 1. It is unclear why Fischer

[Grievance 472] maybe three times"[26] without receiving a response, and that he

"wrote the attorney and said [he] was not receiving any response."[27] In any event,

Watson did not appeal Grievance 472 to CORC, as required by DOCS procedure.[28]

Superintendent Fischer designated Captain Strack[29] to oversee the

investigation into Grievance 477.[30] Captain Strack, in turn, designated Sergeant

Toussaint[31] to question the individuals involved, and Sergeant Toussaint

---

informed Watson that his grievance would be heard after the decision on the
grievance had been rendered (though not transmitted to Watson). However, given
that the Ossining Correctional Facility processes an average of one hundred and
forty grievances each month (2/27/06 Reply Affidavit of Richard Colon in Support
of Defendants' Motion for Summary Judgment ("Colon Reply Aff.") ¶ 7), it seems
reasonable to conclude that Fischer simply did not remember that Watson's
grievance had already been decided.

[26]     Watson Dep. at 83:10.

[27]     *Id.* at 84:7-8.

[28]     *Id.* at 81:2-84:16. *See Booth v. Churner*, 532 U.S. 731 (2001) (stating
that the PLRA exhaustion requirement is not completed until all available
administrative appeals have been completed); *Mendoza v. Goord*, No. 00 Civ.
0146, 2002 WL 31654855 (S.D.N.Y. Nov. 21, 2002) (stating that a prisoner may
appeal to CORC even when he has not received a decision on his grievance, and
filing this appeal is required by the PLRA before bringing suit in federal court).

[29]     Captain Strack's first name was not provided to the Court.

[30]     *See* 1/29/04 Memorandum from Sergeant Toussaint to Captain Strack
("Toussaint Mem."), Ex. A to Plasse Decl. at 5.

[31]     Sergeant Toussaint's first name was not provided to the Court.

-7-

questioned both Watson and Officer Moscoso.[32] Based on these interviews, Strack

recommended that Fischer deny the grievance.[33] Fischer did so on February 5,

2004.[34] Although a copy of Watson's appeal is not in the record, on April 7, 2004,

CORC unanimously denied Grievance 477 without reference to any procedural

irregularities in the grievance process.[35] Defendants admit that Watson exhausted

this grievance according to DOCS procedure.[36] After Grievance 477 was denied

by CORC, Watson filed suit alleging a violation of his Eighth Amendment rights

pursuant to section 1983.[37]

## III. LEGAL STANDARD

Summary judgment is warranted if the record "show[s] that there is

---

[32]    *See* 1/29/04 Memorandum from Officer Moscoso to Sergeant
Toussaint ("Moscoso Mem."), Ex. A to Plasse Decl. at 4; Toussaint Mem. at 5.

[33]    *See* 1/30/04 Investigation Report of Captain Strack ("Strack Report"),
Ex. A to Plasse Decl. at 3.

[34]    *See* Grievance 477 Denial at 2.

[35]    *See* 4/7/04 Central Office Review Committee Denial of Grievance
477 ("CORC Denial"), Ex. A to Plasse Decl., at 1.

[36]    *See* Defendants' Reply Memorandum in Support of Summary
Judgment ("Reply Mem.") at 7 ("[Watson] filed Grievance No. SS/38477/04 on
January 21, 2004 . . . which he fully exhausted when he filed an appeal with
CORC.").

[37]    *See* Pl. Mem. at 1.

-8-

no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."[38]  "An issue of fact is 'genuine' if 'the evidence is such that a jury could return a verdict for the nonmoving party.'"[39]  A fact is material when "it 'might affect the outcome of the suit under the governing law.'"[40]  The moving party has the burden of demonstrating that no genuine issue of material fact exists.[41]

In order to defeat a motion for summary judgment, the non-moving party must raise a genuine issue of material fact.  To do this, it must do more than show that there is a "'metaphysical doubt as to the material facts,'"[42] and it "'may not rely on conclusory allegations or unsubstantiated speculation.'"[43]  In determining whether a genuine issue of material fact exists, the court must

---

[38]    Fed. R. Civ. P. 56(c).

[39]    *Jeffreys v. City of New York*, 426 F.3d 549, 553 (2d Cir. 2005) (quoting *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986)).

[40]    *Id.*

[41]    *See, e.g., Vermont Teddy Bear Co. v. 1-800 BEARGRAM Co.*, 373 F.3d 241, 244 (2d Cir. 2004) (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970)).

[42]    *Woodman v. WWOR-TV, Inc.*, 411 F.3d 69, 75 (2d Cir. 2005) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)).

[43]    *Jeffreys*, 426 F.3d at 554 (quoting *Fujitsu Ltd. v. Federal Express Corp.*, 247 F.3d 423, 428 (2d Cir. 2002)).

-9-

"resolve all ambiguities and draw all reasonable inferences in the non-movant's favor."[44]

## IV.  APPLICABLE LAW

### A.  Administrative Exhaustion

The Prison Litigation Reform Act ("PLRA") states that "no action shall be brought with respect to prison conditions under [section 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."[45]  The Supreme Court has held that "the PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong."[46]  Additionally, the Second Circuit has held that "section 1997e(a) does not divest district courts of jurisdiction over actions containing unexhausted claims."[47]  However, inmates "must exhaust administrative remedies prior to filing

---

[44]     *Vermont Teddy Bear Co.*, 373 F.3d at 244.

[45]     42 U.S.C. § 1997e(a) (2006).

[46]     *Porter v. Nussle*, 534 U.S. 516, 532 (2002).

[47]     *Ortiz v. McBride*, 380 F.3d 649, 656 (2d Cir. 2004); *Richardson v. Goord*, 347 F.3d 431, 434 (2d Cir. 2003) ("[W]e likewise conclude that exhaustion is not jurisdictional.").

-10-

a claim under [section] 1983."[48] Accordingly, a defendant may raise "[f]ailure to exhaust [as] an affirmative defense."[49]

The Second Circuit has recently provided guidance in analyzing the question of exhaustion. In *Hemphill v. New York*, the court laid out a "three-part inquiry" for analyzing whether an inmate has exhausted administrative remedies.[50] *First*, the court must ask "whether administrative remedies were in fact 'available' to the prisoner."[51] *Second*, the court must inquire "whether the defendants may have forfeited the affirmative defense of non-exhaustion by failing to raise or preserve it,"[52] or "whether the defendants' own actions inhibiting the inmate's exhaustion of remedies may estop one or more of the defendants from raising the plaintiff's failure to exhaust as a defense."[53] *Third*, if the remedies were available to the inmate and the defendants are not estopped from raising the non-exhaustion defense, the court must "consider whether 'special circumstances' have been

---

[48]     *Richardson*, 347 F.3d at 434.

[49]     *Giano v. Goord*, 380 F.3d 670, 675 (2d Cir. 2004).

[50]     *Hemphill v. State of New York*, 380 F.3d 680, 686 (2d Cir. 2004).

[51]     *Id.* (quoting 42 U.S.C. § 1997(e)).

[52]     *Id.*

[53]     *Id. Accord Ziemba v. Wezner*, 366 F.3d 161, 163 (2d Cir. 2004) ("[T]he affirmative defense of exhaustion is subject to estoppel.").

-11-

plausibly alleged that justify 'the prisoner's failure to comply with administrative procedural requirements.'"[54]

In *Johnson v. Testman*, the Second Circuit articulated a standard for analyzing the substantive sufficiency of grievances. The court stated that the PLRA "is designed to 'afford corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case.'"[55] The *Johnson* court concluded that grievances serve similar functions to complaints under notice pleading rules, which "prescribe that a complaint 'must contain allegations sufficient to alert the defendants to the nature of the claim and to allow them to defend against it.'"[56] The court held that

> if prison regulations do not prescribe any particular content for inmate grievances, "a grievance suffices if it alerts the prison to the nature of the wrong for which redress is sought. As in a notice pleading system, the grievant need not lay out the facts, articulate legal theories, or demand particular relief. All the grievance need do is object intelligibly to some asserted shortcoming."[57]

---

[54]    *Id.* (quoting *Giano*, 380 F.3d at 676).

[55]    *Johnson v. Testman*, 380 F.3d 691, 697 (2d Cir. 2004) (quoting *Porter*, 534 U.S. at 524-25).

[56]    *Id.* (quoting *Freedom Holdings, Inc. v. Spitzer*, 357 F.3d 205, 234 (2d Cir. 2004)).

[57]    *Id.* (quoting *Strong v. David*, 297 F.3d 646, 650 (7th Cir. 2002)).

-12-

The court reasoned that "uncounseled inmates navigating prison administrative procedures without assistance cannot be expected to satisfy a standard more stringent than that of notice pleading."[58] However, since the PLRA requires that "prison officials be 'afforded . . . time and opportunity to address complaints internally,'"[59] the court held that in order to exhaust, "inmates must provide enough information about the conduct of which they complain to allow prison officials to take appropriate responsive measures."[60] When analyzing this issue, courts must also keep in mind that "pro se plaintiffs' papers are held to 'less stringent standards than formal pleadings drafted by lawyers,'"[61] and it would be "illogical to impose a higher technical pleading standard in informal administrative prison grievance proceedings than would be required in federal court."[62]

Therefore, the question is whether Grievance 477 provided enough information about the alleged assault to permit prison officials to take "appropriate

---

[58]     *Id.*

[59]     *Id.* (quoting *Porter*, 534 U.S. at 524-25).

[60]     *Id.*

[61]     *Sulton v. Wright*, 265 F. Supp. 2d 292, 298 (S.D.N.Y. 2003) (quoting *Haines v. Kerner*, 404 U.S. 519, 520 (1972)).

[62]     *Id.*

-13-

responsive measures" with regard to that assault.[63]

## B. Eighth Amendment Claim

The Eighth Amendment to the United States Constitution decrees that "[e]xcessive bail shall not be required, nor excessive fines imposed, *nor cruel and unusual punishments inflicted*."[64] Watson's section 1983 claim alleges that the defendants violated his Eighth Amendment rights by using excessive force against him. In order for an inmate to make out an Eighth Amendment excessive force claim against a corrections officer, the plaintiff must demonstrate the existence of "two components – one subjective, focusing on the defendant's motive for his conduct, and the other objective, focusing on the conduct's effect."[65]

The "alleged [objective] violation must be 'sufficiently serious.'"[66] Courts have found that the objective component is "context specific and

---

[63]     *Johnson*, 380 F.3d at 697.

[64]     U.S. CONST. amend. 8 (emphasis added).

[65]     *Sims v. Artuz*, 230 F.3d 14, 20 (2d Cir. 2000). *See also Hudson v. McMillian*, 503 U.S. 1, 8 (1992) (stating that in considering prisoners' Eighth Amendment excessive force claims, courts must inquire into both the subjective states of mind of the prison officials and the objective seriousness of the alleged harm).

[66]     *Griffin v. Crippen*, 193 F.3d 89, 91 (2d Cir. 1999) (quoting *Hudson*, 503 U.S. at 8).

responsive to 'contemporary standards of decency,'"[67] and that whenever "prison

officials maliciously and sadistically use force to cause harm, contemporary

standards of decency always are violated."[68] However, the Second Circuit has

narrowed the broad reach of this standard by holding that "'[n]ot every push or

shove, even if it may later seem unnecessary in the peace of a judge's chambers,

violates a prisoner's constitutional rights.'"[69]

    With regard to the subjective component, "the inmate must show that

the prison officials involved 'had a wanton state of mind when they were engaging

in the alleged misconduct.'[70] "[T]he wantonness inquiry turns on 'whether force

was applied in a good-faith effort to maintain or restore discipline, or maliciously

and sadistically to cause harm.'"[71] In analyzing this question, several factors may

be considered, among them "the extent of the injury and the mental state of the

defendant, as well as 'the need for the application of force; the correlation between

---

  [67] *Blyden v. Mancusi*, 186 F.3d 252, 263 (2d Cir. 1999) (quoting
*Hudson*, 503 U.S at 8).

  [68] *Hudson*, 503 U.S. at 9.

  [69] *Boddie v. Schnieder*, 105 F.3d 857, 862 (2d Cir. 1997) (quoting
*Johnson v. Glick*, 481 F.2d 1028, 1033 (2d Cir. 1973)).

  [70] *Id.* (quoting *Davidson v. Flynn*, 32 F.3d 27, 30 (2d Cir. 1994)).

  [71] *Blyden*, 186 F.3d at 263 (quoting *Hudson*, 503 U.S. at 7).

-15-

the need and the amount of force used; the threat reasonably perceived by the defendants; and any efforts made by the defendants to temper the severity of the forceful response.'"[72] An "'absence of serious injury is . . . relevant to the Eighth Amendment inquiry, but does not end it.'"[73]

Though it has limited the range of the objective component, the Second Circuit has expanded the range of the subjective component by holding that "the malicious use of force to cause harm constitutes an 'Eighth Amendment violation[] per se . . . whether or not significant injury is evident.'"[74] The determination of wantonness depends on whether the actions of the defendants "involve[d] force that [wa]s applied 'maliciously and sadistically to cause harm' as opposed to force that [wa]s 'applied in a good-faith effort to maintain or restore discipline.'"[75] Courts in this circuit have held that although the subjective component is "inherently an inquiry into [the] defendant's state of mind, plaintiff need not offer particular evidence of defendant's mental state. For purposes of opposing defendants' summary judgment motion, plaintiff has satisfied his burden

[72]   *Scott v. Coughlin*, 344 F.3d 282, 291 (2d Cir. 2003) (quoting *Romano v. Howarth*, 998 F.2d 101, 105 (2d Cir. 1993)).

[73]   *Id.* (quoting *Hudson*, 503 U.S. at 7).

[74]   *Griffen*, 193 F.3d at 91 (quoting *Blyden*, 186 F.3d at 263).

[75]   *Id.* (quoting *Hudson*, 503 U.S. at 7).

on this element by merely pleading a scenario in which the use of force could not have been in good faith."[76]

## C. Eleventh Amendment Immunity

The Eleventh Amendment states that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."[77] This absolute immunity now includes suits against state officers being sued in their official capacities for acts "carried out under state law authority."[78] Additionally, the Eleventh Amendment provides qualified immunity to "protect public officials from individual-capacity lawsuits."[79] Watson has agreed to amend his Complaint and bring suit against defendants only in their individual capacities, not in their official capacities.[80]

Qualified immunity protects government officials from suits against

---

[76] *Santiago v. Campisi*, 91 F. Supp. 2d 665, 673 (S.D.N.Y. 2000).

[77] U.S. CONST. amend. 11.

[78] 17A James Wm. Moore et al., Moore's Federal Practice ("Moore's"), ¶ 123.40[1][a].

[79] *Id.*¶ 123.40[1][c].

[80] *See* Pl. Mem. at 17.

-17-

them in their individual capacities when they are performing "discretionary functions . . . provided that these acts do not violate 'clearly established statutory or constitutional rights.' Courts determine [whether qualified immunity applies] by an objective test."[81] Qualified immunity is not available where "the contours of the [violated] right [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right."[82]

## V.   DISCUSSION

### A.    Exhaustion of Administrative Remedies

The exhaustion inquiry relates only to Grievances 472 and 477. Defendants concede that Watson exhausted Grievance 477,[83] although they deny that Watson exhausted Grievance 472. But defendants have a substantive objection to Grievance 477. Defendants claim that Grievance 477 "only involve[s] a complaint filed by plaintiff seeking for the prison authorities to investigate an alleged threat by CO Moscoso to poison plaintiff's food," rather than the alleged use of force on January 5.[84] According to defendants, only

---

[81]    Moore's ¶ 123.40[1][c] (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).

[82]    *Anderson v. Creighton*, 483 U.S. 635, 640 (1987).

[83]    Reply Mem. at 7.

[84]    *Id.* at 3.

-18-

Grievance 472 addressed the January 5 incident.[85]  Defendants further claim that

the only reason Grievance 477 referred to the January 5 incident was "to provide a

motive for the CO's alleged threat,"[86] and that Watson "did not intend [Grievance

477] to address his complaint of alleged use of excessive force by defendants

during the January 5 . . . incident and did not file it in lieu of [Grievance 472.]"[87]

An examination of Grievance 477 reveals that it was not written

solely to complain of a food poisoning threat.  Watson wrote that "Moscoso

threatened to poison [his] food if, as [Moscoso] put it, [Watson] open[ed his]

mouth about what happened January 5th, 2004 . . . in which [he] was attacked

from behind and thrown to the floor . . . [and] was kicked, punched, stabbed by

several COs including CO Moscoso."[88]  At the end of the grievance, Watson

requests "an investigation in to [sic] this matter."[89]  Watson does not specifically

define "this matter," but it is reasonable to infer from the description of the alleged

assault that Watson wanted the IGRC to investigate both the food poisoning threat

---

[85]    *Id.*

[86]    *Id.*

[87]    *Id.* at 4.

[88]    Grievance 477 at 6.

[89]    *Id.*

-19-

and the alleged excessive force incident.

The record reveals that prison officials viewed this as the purpose of Grievance 477. In his January 29, 2004 memorandum regarding Grievance 477, Sergeant Toussaint wrote to Captain Strack that he had "investigated the . . . complaint as per [Strack's] order," and had interviewed both Watson and CO Moscoso.[90] Moscoso stated in the interview that "he never attacked, kicked, punched, or stabbed [Watson] at any time."[91] This statement demonstrates that the assault was a subject of the investigation. Captain Strack's investigation report states that Moscoso "denied all allegations"[92] in the grievance, and Moscoso's written response to the grievance investigation declares that Moscoso "never attacked, kicked, punched, or stabbed [Watson] at any time."[93]

Because Grievance 477 complained not only about the poisoning incident but also about the alleged assault as well, the next question is whether the complaint "provided enough information" about the assault to "allow prison

---

[90]     Toussaint Mem. at 5.

[91]     *Id.*

[92]     Strack Report at 3.

[93]     Moscoso Mem. at 4.

-20-

officials to take appropriate responsive measures."[94] The grievance is sufficient

for this purpose. Watson complains that he was "attacked from behind and thrown

to the floor while [he] was on [his] way to shower," that he was "kicked, punched,

stabbed by several COs," and that "the assault on [his] person was unprovoked."[95]

Additionally, the internal prison documents demonstrate that prison officials took

appropriate responsive measures – Sergeant Toussaint interviewed both Watson

and Officer Moscoso about the alleged attack.[96]

        Grievance 477 differs from inmate complaints which have been found

insufficient under *Johnson*. In *Scott v. Gardner*, a prison inmate alleged that

prison officials had improperly forced him to take urine tests.[97] In his section

1983 suit, the prisoner claimed that this was a result of retaliation. The court

found the complaint to be inadequate, however, because although the suit alleged

retaliatory motives, the grievance did not.[98] This omission failed to "alert the

---

[94]    *Johnson*, 380 F.3d at 697.

[95]    Grievance 477 at 6.

[96]    Toussaint Mem. at 5.

[97]    *See Scott v. Gardner*, No. 02 Civ. 8963, 2005 U.S. Dist. LEXIS 7372, at *1-2 (S.D.N.Y. Apr. 28, 2005).

[98]    *See id.* at *9-10 ("Scott's disciplinary appeal papers alleged that Young, in taking the tests, and Gardner and Longobardo, in ordering the tests, did not adhere to proper procedures, but nothing was alleged to suggest a retaliatory

-21-

defendants to the nature of the claim."[99]  Watson's Complaint, however, does not differ from his grievance – both allege an attack, and the lawsuit does not present any new theories of motive.

Because Grievance 477 sufficiently complains of the alleged excessive force incident which is the basis for Watson's section 1983 suit, there is no need to address whether Grievance 472 was exhausted.  Defendants' motion for summary judgment on exhaustion grounds is denied.

## B.  Eighth Amendment Violation

Watson has offered proof of both the objective and subjective components of an Eighth Amendment claim sufficient to withstand defendants' summary judgment motion.  With regard to the objective component, Watson has submitted the medical report of Ossining Correctional Facility Nurse Conklin, which states that his left shin had a "hematoma approx. size 25¢ piece & ~~puncture wound~~ laceration approx. ½ [inch]" across, which injury received 2 sutures; the report also states that his lip was lacerated with "bleeding and swelling," that there was a "superficial laceration" on his left wrist, and that he complained of pain in

motive.").

[99]    *Id.* (quoting *Freedom Holdings*, 357 F.3d at 234).

-22-

his shoulder and head.[100] These injuries are not severe, nor are they trivial. Although there is no exact definition of de minimis injury, courts in the Second Circuit have held that "'[m]inor' injuries suffice for an Eighth Amendment claim, and bruising or equivalent injuries may be found by a reasonable fact-finder to constitute minor rather than de minimis harm."[101] For example, Second Circuit courts have held that an "an open-handed slap" constitutes de minimis harm,[102] but a wrist that was "bruised and swollen," requiring x-rays, constituted "'sufficiently serious'" harm "to satisfy the objective component of the [Eighth Amendment] test."[103] The injuries Watson received are clearly more severe than a slap or a bruised wrist.

Because the objective component is context specific, it is important to examine the circumstances under which Watson alleges he was unconstitutionally injured.[104] Defendants assert that they used force against Watson in order to

---

[100]    1/5/04 Use of Force Report of Registered Nurse Conklin, ("Medical Report"), Ex. G to Plasse Decl. at 1-2.

[101]    *McCrory v. Belden*, No. 01 Civ. 0525, 2003 WL 22271192, at *6 (S.D.N.Y. Mar. 22, 2004).

[102]    *Santiago*, 91 F. Supp. 2d at 674.

[103]    *Miner v. Ramsey*, No. 99 Civ. 11661, 2001 WL 540746, at *2 (S.D.N.Y. May 22, 2001) (quoting *Scott*, 344 F.3d at 291).

[104]    *See Blyden*, 186 F.3d at 263.

obtain his compliance in returning to his cell after he was refused a shower.[105]
Watson claims that he was walking "back towards his cell," which was "in the
same direction as the shower."[106] Watson's injuries included a laceration,
(originally described by the prison nurse as a "puncture wound") that was half an
inch long and required stitches.[107] This would appear to be an unnecessary
consequence of returning a prisoner to his cell. Watson has therefore raised a
material issue of fact with respect to the objective component of an Eighth
Amendment claim.

        With respect to the subjective component, Watson testified that
defendants "threw [him] down on the floor" and started "beating on [him]."[108] He
also states that afterward, when defendants escorted him to the prison medical
facility, they "grab[bed his] hand, thr[ew him] against the wall" while taunting him
to "stop resisting, stop resisting, then laughing" and "com[ing] back and do[ing] it
again."[109] Another inmate, Ron Caparelli, testified that Watson was merely "a

---

[105]    *See* Def. Mem. at 4.

[106]    Pl. Mem. at 2.

[107]    Medical Report at 1.

[108]    Watson Dep. at 109:2-3.

[109]    *Id.* at 110:12-15.

little disappointed" at being refused a shower, and claimed to have seen

defendants "pounce" on Watson as he was passing by Caparelli's cell; Caparelli

testified that Watson "didn't have a chance to" turn around before defendants

began to hit him.[110] These accounts raise sufficient issues of fact as to whether

defendants wantonly used force against Watson. Drawing all reasonable

inferences in Watson's favor, and considering that "[c]ourts in this district are

hesitant 'to dismiss complaints alleging excessive force even at the summary

judgment stage if conflicts exist in the record regarding the degree and

justification of force,'"[111] defendants' motion for summary judgment based on the

failure to state sufficient facts to sustain an Eighth Amendment claim is denied.

## C. Eleventh Amendment Immunity

Defendants are not entitled to Eleventh Amendment immunity.

Indeed, defendants appear to have abandoned that argument.[112] Because this Court

has already found that Watson has "uncover[ed] evidence sufficient to create a

genuine issue as to whether . . . defendant[s] in fact committed" the alleged

---

[110]     01/22/04 Tier III Disciplinary Hearing ("Disciplinary Hearing"), Ex.
F to Plasse Decl. at 94:4-100:19.

[111]     *Jeanty v. Orange County*, 379 F. Supp. 2d 533, 541 (S.D.N.Y. 2005)
(quoting *Atkins v. County of Orange*, 372 F. Supp. 2d 377, 401 (S.D.N.Y. 2005)).

[112]     *See* Reply Mem. (no mention of Eleventh Amendment immunity).

-25-

excessive force attack,[113] and because it is reasonable to believe that defendants
would have understood that the use of excessive force violated a clearly defined
constitutional right, there can be no claim of qualified immunity.

## VI. CONCLUSION

For the foregoing reasons, defendants' motion is denied. The Clerk
of the Court is directed to close this motion (Document number 17 on the docket).
A status conference is scheduled for July 7, 2006, at 4:30 p.m.

SO ORDERED:

Shira A. Scheindlin
U.S.D.J.

Dated:     New York, New York
           June 20, 2006

---

[113]     *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985).

-26-

## -Appearances-

**Counsel for Plaintiff:**

Andrew F. Plasse, Esq.
ANDREW F. PLASSE, P.C.
352 7th Avenue, Suite 402
New York, New York 10001
(212) 695-5811

**Counsel for Defendants:**

Jose L. Velez
Assistant Attorney General
120 Broadway Avenue, 24th Floor
New York, New York 10271
(212) 416-8164